SLEEPER et al. v. WOOD et al.

(Circuit Court of Appeals, First Circuit.    March 27, 1894.)

No. 26.

SALE—WARRANTY—EVIDENCE—CUSTOM.

 In March, 1888, certain packers of corn sold 2,000 cases "best packing of 1888 corn," with "usual guaranty against. swells." The evidence showed conclusively that "swells," as used in the trade, included all cans whose contents were sour; that the "usual guaranty" was until July 1st of the following year; and that it was customary before that time to notify the seller of the number of spoiled cans, and return the goods. The evidence. failed to show that the words "best packing of 1888" had any definite meaning in the trade. *Held*, that these words carried no implied warranty of quality, and that in the absence of any notice or return of the spoiled goods, according to the conditions of the warranty against swells, there could be no recovery for the spoiled corn.

In Error to the Circuit Court of the United States for the District of Massachusetts.

This was an action by Solomon S. Sleeper and others against William R. Wood and others to recover damages for breach of warranty in the sale of certain canned corn. The court below directed a verdict for defendants, and to review the judgment entered thereon plaintiffs sued out this writ of error.

William B. French and Heman W. Chaplin, for plaintiffs in error.

Myers & Warner and George E. Bird, for defendants in error.

Before COLT, Circuit Judge, and CARPENTER and ALDRICH, District Judges.

CARPENTER, District Judge. The questions arising in this case will appear from the following extract from the bill of exceptions:

This is an action of contract to recover for breach of warranties of quality of 2,000 cases of canned corn sold by the defendants to the plaintiffs. * * * There was evidence tending to show the following facts: The plaintiffs, partners under the firm name of S. S. Sleeper & Co., are wholesale grocers, having their usual place of business in Boston. The defendants are manufacturers and packers of canned corn, residing in Portland, but having a factory or canning establishment at Cumberland, in the state of Maine. The defendants had, before the sale, employed F. Robbins & Co., merchandise brokers, of Boston, to sell canned corn for them, including the corn in question. The contract for the sale of the corn was made between the brokers, F. Robbins & Co., representing the defendants, and the plaintiffs. Immediately after the sale, the defendants wrote and forwarded to the brokers, who delivered to the plaintiffs, the sold note, of which the following is a copy:

"Portland, Me., March 15, 1888.

"Sold Messrs. S. S. Sleeper & Co., Boston, 2,000 c., 4,000 doz., best packing of 1888 corn, at $1.20 per doz., less 1½% dis. for cash, if paid within ten days from shipment, or sixty days accep., tins to be lacquered or left bright as

buyer may prefer, buyer to furnish labels and wrappers at our factory in Strong, Maine, on or before Aug. 15/88, without charge; we to put them on in first-class style, and ship goods when ready, F. O. B. Portland; usual guarantee against swells and of delivery in case of short pack, i. e. pro rata delivery and guarantee 60%. In case the delivery is less than 60%, then we to pay difference between $1.20 and price of best Maine corn on each doz. short. We prefer to have buyer examine corn at factory before labeled, or we will ship a few cs. specimens for examination and approval after packed.

"Franklin Packing Co.,<br>"J. P. Jordan, Treas.

"Quantity changed from 2,500 to 2,000 cs.
"3/20/88.                                    J. P. Jordan."

Early in October, 1888, the defendants shipped to the plaintiffs a few cans of corn, for examination and approval, in accordance with the provisions of the sold note. The plaintiffs, on examination, found the specimen cans to be all right, and ordered forward the 2,000 cases of corn, which the defendants, on the last days of October, shipped to the plaintiffs, and for which the plaintiffs paid the contract price on November 26, 1888. * * * The plaintiffs contended that the sold note contained two warranties. The one, that the corn should be of a quality equal to that known in the trade as "the best packing of 1888 corn;" the other, that the corn should be sweet, sound, and merchantable corn, until the 1st day of July, 1889. The plaintiffs requested the court to rule: "The descriptive words 'best packing of 1888 corn' in the sold note given by the defendants to the plaintiffs import, constitute, and amount to a warranty that the goods sold should be of the quality so described." The court refused the plaintiffs' request, and directed a verdict for the defendants, and ruled as follows: "(1) The court rules, as matter of law, on the evidence, that the plaintiffs are not entitled to a verdict, for the reason that they have not shown that the notice required by the warranty proved was given to the defendants on or before July 1. (2) The words 'best packing of 1888 corn,' used in the sold note, did not import a warranty." * * * The plaintiffs duly excepted to the rulings of the court and to his refusals to rule, and ask that their exceptions be allowed.

It appeared in the evidence that after the delivery, and before the 1st of July following, a large part of the corn was found to be sour. The question which has been argued here is, in the first place, whether the souring of the corn be included in the "guarantee against swells," or whether it be covered by a guaranty implied in the words "best packing of 1888 corn." It seems to us that on this question there could be only one proper conclusion by the jury. The word "swells," according to the testimony, primarily refers to cans whose ends are forced outward by the gases engendered by fermentation; but the evidence seems to us conclusive that, in the meaning of the trade and in the meaning of the parties to this contract, it includes all cans whose contents are sour. One of the plaintiffs testifies that the word "swells" covers bad corn,—corn that is spoiled,—and that the usual guaranty is until the 1st of the following July; and the testimony of others so completely supports this statement that a different conclusion seems to us inadmissible. It seems to us also very clear that a condition of the "usual guarantee against swells" is that the purchaser of corn who means to take advantage of this guaranty must, before the 1st of July following, make to the seller a statement of the number of spoiled cans, and return the goods as evidence of good faith, and to enable the seller to verify the truth of the claim. One of the plaintiffs testifies that it is usual "to return the cans to the packers." There

is, indeed, some testimony against both these propositions; but the testimony of both plaintiffs and defendants clearly establishes both, as far as it goes, and does not contradict either, and the great mass of the evidence is to the same effect. If a new trial were to be awarded, the plaintiffs must ask the jury to discredit the testimony of both parties and of much the greater part of the witnesses on both sides, unless they consent that the defects in the corn come under the "guarantee against swells" and that the guaranty is to be interpreted as above stated. Now the evidence shows general complaint of the quality of the corn, but no specific claim or statement of the amount of damaged goods, and no return or offer to return the same to the seller. Under these circumstances, we think the learned judge could not have done otherwise than direct a verdict for the defendants. A verdict for the plaintiffs, on this evidence and the concessions of the plaintiffs, it seems to us, must have been set aside upon the ground that there was no evidence to justify such result. There was some testimony of a few witnesses to the effect that sour corn, where the ends of the cans are not actually pressed outwards by gas, is not included in the "guarantee against swells;" and the plaintiffs contend that on this evidence the jury should have been left free to find that the defects in the goods of which they complain do not come within the guaranty against "swells" with its accompanying proviso of notice and return of the goods, but, on the other hand, are covered by an implied warranty of good quality contained in the words "best packing of 1888 corn." Passing by the question whether there can be an implied warranty in any words of a written contract which contains an express warranty, we are unable to find any warranty implied in the words above quoted. There is no evidence to show that these words have any definite meaning in the trade here involved. It is clear that of themselves they do not import a definite warranty. Many witnesses were called to state the understanding of these words by the trade, but hardly any two of them agree in their interpretation. Some say it means "the best corn packed that year;" some, "the best corn packed that year in the state of Maine;" some, "the extra corn, the finest grade;" some, "the best corn that can be produced in Maine;" and some, the best quality of milky, white, tender, juicy, and sweet corn. It is manifest that there is no evidence of a general custom of the trade which could interpret the warranty supposed to be contained in these words. Our conclusion is that the record shows no error. Judgment of the circuit court affirmed.